IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MATTHEW S. TAYSOM, <br><br> Plaintiff, <br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br> Defendant. | REPORT & RECOMMENDATION <br><br> Case No. 2:13-cv-297-RJS-BCW <br><br> District Judge Robert J. Shelby <br><br> Magistrate Judge Brooke Wells |

District Judge Robert J. Shelby has referred this case to Magistrate Judge Brooke C. Wells pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff Matthew Scott Taysom seeks judicial review of the determination of the Commissioner of the Social Security Administration, which denied his applications for Period of Disability, Disability Insurance Benefits and Supplemental Security Income.

After careful consideration of the written briefs, the administrative record and relevant legal authority, the undersigned has determined that oral argument is unnecessary and issues the following Report and Recommendation **RECOMMENDING** that the District Court **REVERSE AND REMAND** the decision of the Commissioner.

## BACKGROUND[2]

### A. Procedural History

Plaintiff, Matthew S. Taysom, who was born on March 27, 1969,[3] filed an application for a period of disability and disability insurance benefits on March 16, 2009.[4] On January 14,

---

[1] Docket no. 25.
[2] The Court finds the parties have adequately set forth Plaintiff's medical history in their respective briefs. Therefore, the Court finds it unnecessary to repeat that record in specific detail here. Rather, the Court will only note those items that are pertinent to this Report and Recommendation.

2010, Plaintiff filed an application for supplemental security income.[5] In these applications for benefits, Plaintiff alleged an onset date of disability of July 7, 2007.[6] Plaintiff meets the insured status requirements through December 31, 2012.[7]

Plaintiff contends he is disabled due to both physical and mental impairments. Mainly, Plaintiff's ailments stem from a workplace accident in which Plaintiff accidentally shot a high pressure paint gun into his hand. As a result, Plaintiff has suffered tendon, muscle and nerve damage to his right hand that has required numerous surgeries to repair the damaged tissue and remove injected paint. Plaintiff has also undergone physical therapy and hyperbaric oxygen treatments for his hand. In addition to his physical injuries, Plaintiff alleges that since the accident, he has experienced mental and emotional changes and has sought treatment.

Plaintiff's claims were initially denied on July 7, 2009, and upon reconsideration on October 22, 2009.[8] Plaintiff then requested an administrative hearing. Plaintiff did not appear at the hearing scheduled on September 14, 2011 but his attorney appeared. The hearing was then continued to November 18, 2011, with a supplemental hearing held on December 16, 2011.

On December 29, 2011, the ALJ issued a written decision denying Plaintiff's claims for benefits.[9] Plaintiff then appealed the denial to the Social Security Appeals Council, which denied review of the ALJ's decision on March 29, 2013.[10] Pursuant to 42 U.S.C. §405(g), this appeal followed.

---

[3] Tr. at 42.
[4] Tr. at 20.
[5] Id.
[6] Id.
[7] Tr. at 22.
[8] Tr. at 131-133.
[9] Tr. at 20-34.
[10] Tr. at 1.

**B. The ALJ's Opinion**

The ALJ found at Step One of the required sequential evaluation process[11] that Plaintiff had not engaged in substantial gainful activity since July 6, 2007, the alleged onset date.[12] At Step Two, the ALJ found Plaintiff's severe impairments to be (1) right hand impairment (seven surgeries to remove paint and repair tendons); (2) right carpal tunnel surgery, (3) anxiety disorder, (4) posttraumatic stress disorder, and (5) depression.[13] At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments contained within the regulations.[14]

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "light work," except with the following limitations:

- The claimant is limited to occasional lifting and/or carrying with the left hand (including upward pulling) a maximum of 20 pounds occasionally and 10 pounds frequently; and
- The claimant cannot lift and/or carry with the right hand (including upward pulling).
- The claimant is limited to occasional climbing of stairs, squatting, kneeling, reaching above the shoulders with right upper extremity, pushing and pulling with right upper extremity, turning arm and wrist with right hand; and driving;
- The claimant's left upper extremity can frequently push/pull, turn arm and wrist, open and close fist, and use hand and fingers;
- The claimant can frequently walk, bend/stop, and use foot controls;
- The claimant's right upper extremity cannot open and close fist nor use hand and fingers; and
- The claimant is limited to balancing oneself continuously;
- The claimant's grip strength, fine dexterity and manual dexterity are within the normal range for the left hand; and
- The claimant cannot use manual dexterity, fine dexterity or grip strength for the right hand.
- The claimant's ability to concentrate is mildly limited;
- The claimant's ability to use memory is not limited;

---

[11] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step evaluation process for determining whether a claimant is disabled).
[12] Tr. at 22.
[13] Id.
[14] Tr. at 23.

- The claimant's ability to understand is not limited;
- The claimant's ability to exercise judgment is mildly limited;
- The claimant's ability to remember work procedures is mildly limited;
- The claimant's ability to follow simple instructions is not limited;
- The claimant's ability to follow detailed instructions is mildly limited;
- The claimant's ability to perform duties within a schedule is moderately limited;
- The claimant's ability to sustain a routine without supervision is mildly limited;
- The claimant's ability to relate with others is not limited;
- The claimant's ability to work with the general public is mildly limited;
- The claimant's ability to get along with co-workers is not limited;
- The claimant's ability to deal with work production is moderately limited; and
- The claimant's ability to deal with stress is moderately limited;
- The claimant's vision is normal in the right eye and left eye with the use of prescribed glasses when appropriate.
- The claimant's hearing is normal in the right ear and left ear, no hearing aids required.
- The claimant's ability to tolerate air pollutants in a cold and hot setting is within a normal range.[15]

At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work as a trailer assembler or painter given Plaintiff's RFC.[16] However, based upon testimony of the vocational expert, the ALJ found Plaintiff was capable of performing jobs such as a surveillance systems monitor and a fingerprint clerk.[17] Thus, at Step Five, the ALJ found "claimant has not been under a disability, as defined in the Social Security Act, from July 6, 2007, through the date of his decision."[18]

## STANDARD OF REVIEW

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."[19] If

---

[15] Tr. at 23-24.
[16] Tr. at 32.
[17] Tr. at 33.
[18] Tr. at 34.
[19] Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014).

supported by substantial evidence, the findings are conclusive and must be affirmed.[20] Substantial evidence is "more than a scintilla, but less than a preponderance."[21] "The possibility of drawing to inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[22]

In addition, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[23] The Court "...may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter be before it de novo.'"[24] Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this court will a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[25]

## **ANALYSIS**

Plaintiff raises two issues on appeal: (1) Whether the ALJ erred by failing to properly evaluate the treating specialist opinion of Dr. Scott Parry?; (2) Whether the ALJ erred by failing to include all Mr. Taysom's established limitations in the residual functional capacity assessment? The undersigned will address these issues in turn.

A. **Medical Opinions**

Plaintiff argues the ALJ improperly weighed the opinion of Plaintiff's treating physician, Dr. Scott Parry. Dr. Parry is an orthopedic surgeon who has been treating Plaintiff since 2007 when Plaintiff injured his right hand and has performed each of the now eight surgeries Plaintiff has had on his hand. Dr. Parry has also examined Plaintiff on numerous occasions.

---

[20] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[21] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).
[22] Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).
[23] Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000).
[24] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).
[25] Jensen v Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

On August 25, 2011, Dr. Parry completed a "Physical Residual Function Capacity Statement" which provided his opinions as to Plaintiff's condition.[26] This form asked a series of questions and provided checkboxes and space for Dr. Parry to fill in his answers. Dr. Parry diagnosed Plaintiff with "...high pressure paint injection [right] hand [with] residual neuropathy, tenosynovitis."[27] Dr. Parry opined that Plaintiff's prognosis was "poor" and indicated Plaintiff's pain was severe enough to constantly interfere with Plaintiff's attention and concentration.[28] Dr. Parry opined Plaintiff's has no use of his right hand. Dr. Parry based his opinion on Plaintiff's "history & medical file," "physical examinations," "progress and office notes" and "x-rays, CT scans or MRIs."[29] Lastly, Dr. Parry commented, "patient is trying to further his education at this point needs surgeries and on his [right] hand so he will be able to retrained in new vocation."[30]

In the ALJ's opinion, after briefly summarizing some of Dr. Parry's findings, the ALJ analyzed the opinion of Dr. Parry as follows:

> The undersigned does agree that claimant has limited use of his right hand and the residual functional capacity was, accordingly, reduced to accommodate those limitations as outlined above. In addition, the undersigned further reduced the residual functional capacity to incorporate limitations from claimant's mental impairments, but not to the degree opined by Dr. Parry.
>
> Furthermore, the Administrative Law Judge finds that Dr. Parry's opinions are ambiguous and offers no real supported opinion regarding the ability or inability to perform the work suggested hereafter by the vocational expert.
>
> Moreover, treating physicians may be rejected if brief, conclusory, and unsupported by medical evidence. Evaluation forms, consisting of checkboxes, and standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.

---

[26] Tr. 917-924.
[27] Tr. at 917.
[28] Id.
[29] Tr. at 920.
[30] Id.

For all these reasons, Dr. Parry's opinions are not given controlling weight and, in fact, are afforded little weight as to the claimant's ability, or lack thereof, to perform work-related activities.[31]

Under the regulations, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments, including…symptoms, diagnosis, and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."[32] Social Security Ruling ("SSR") 96-8p provides "[t]he RFC assessment must always consider and address medical source opinions. If the assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[33]

In the 10th Circuit, in evaluating Plaintiff's treating physician(s), "…the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."[34] "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded controlling weight, on the matter to which it relates."[35] "The ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence…'"[36] "If the opinion is deficient in either of these respects, it is not to be giving controlling weight."[37] However, "[e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference[.]"[38] Thus, at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including

---

[31] Tr. at 31.
[32] 20 C.F.R. § 416.927(a)(2).
[33] SSR 96-8p, 1996 WL 374184, at *7 (Effective July 2, 1996).
[34] Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011).
[35] Id. (citing Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)).
[36] White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001)(citing 20 C.F.R. § 404.1527(d)(2)).
[37] Krauser, at 1330.
[38] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted).

whether it is being rejected outright) and give good reasons, tied to the factors"[39] provided in [20 C.F.R. § 404.1527].[40] "If this procedure is not followed, a remand is required."[41]

Plaintiff argues the ALJ erred by not affording the opinions of Dr. Parry controlling weight. Specifically, Plaintiff argues that Dr. Parry provided specific limitations and his opinion is not ambiguous. Further, according to Plaintiff, the ALJ did not provide any citations to the record supporting his findings with regard to Dr. Parry and in fact the record demonstrates that Dr. Perry's opinions were accompanied by written reports and treatment notes.

On the other hand, Defendant essentially argues that the ALJ properly weighed Dr. Parry's opinion. Specifically, Dr. Parry's comment regarding Plaintiff seeking to further his education in order to train for a new vocation indicates that Dr. Parry felt Plaintiff is not disabled and would be able to work after further surgery. Defendant also points out that Dr. Parry authored his opinion after a two-year gap in treatment and the vocational expert's opinions related to jobs Plaintiff could perform based upon his right hand limitations. Therefore, Dr. Parry's opinion is contradictory and the ALJ properly discounted it.

The Court finds the ALJ properly found Dr. Parry's opinion not to be afforded "controlling weight" because his opinions were inconsistent with other substantial evidence in the file. Namely, Dr. Parry's opinion arguably conflicts with the vocational expert's testimony and also with the state agency consultants' opinions. However, the Court does find error in the reasoning the ALJ used in discounting Dr. Parry's opinions at the second step of the analysis. In making this determination, the Court is cognizant that the ALJ is not required to discuss all the

---

[39] Krauser, at 1330.
[40] Those factors are: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. See Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)(internal quotation omitted).
[41] Chrismon v. Colvin, 531 Fed. App'x 893, 900-901, (10th Cir. 2013)(unpublished).

factors set forth in the regulations and case law but in the instant case the Court finds the ALJ failed to clearly demonstrate how his analysis was tied to the regulatory factors and failed to recognize the well-established principle that "[e]ven if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference[.]"[42]

As Plaintiff points out, "Dr. Scott Parry is an orthopedic surgeon.  He has been Mr. Taysom's treating physician since he sustained the paint gun injury to his hand.  As a treating physician, Dr. Parry has performed eight surgeries to date on Mr. Taysom.  In addition, Dr. Parry has consistently performed examinations and other testing to determine the severity of Mr. Taysom's injury."[43]  These considerations are contemplated by the regulations and the ALJ in this case failed to mention them.  The Court believes these considerations to be especially important in the instant case because of the nature of Plaintiff's injury and the consistent treatment Plaintiff has received from Dr. Parry.  No other medical professional in the record has such an extensive relationship with Plaintiff and in turn Parry's knowledge of Plaintiff's abilities and limitations ought not to be ignored or discounted so easily or based upon the type of form the physician utilized to express his opinions.

Therefore, the Court finds the ALJ erred by not providing "good reasons tied to the regulatory factors…"[44] for discounting Dr. Parry's opinions.  The Court agrees with Plaintiff's arguments that the ALJ's did not properly provide any citation to the record or demonstrate to how Dr. Parry's opinion is "ambiguous."   In addition, the ALJ's statement that "evaluation forms, consisting of checkboxes, and standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence"[45] does not properly summarize the

---

[42] Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004)(internal quotations and citations omitted).
[43] Opening Br. at p. 10.
[44] Krauser, at 1330.
[45] Tr. at 31.

evidence or Dr. Parry's treatment of Plaintiff in this case. Upon review of the record, it is clear that the Dr. Parry provided much more documentation than just his opinion contained within a checkbox and short answer form. The record contains numerous records detailing his examination and surgeries performed on Plaintiff's hand.[46] Therefore, the Court finds the ALJ erred by not complying with the second step of the analysis set forth above. The ALJ did not give good reasons for affording Dr. Parry's opinion little weight and the ALJ's reasoning was not sufficiently tied to the factors.[47]

B. **RFC Assessment**

Plaintiff argues the ALJ erred by failing to include all of his established impairments in his residual functional capacity ("RFC"). Specifically, after finding Plaintiff to have severe mental impairments, the ALJ failed to include any meaningful limitations for these impairments in Plaintiff's RFC. In addition, Plaintiff argues the ALJ erred by not evaluating the side-effects of the medications Plaintiff takes for his impairments.

i. **Mental Impairments**

Plaintiff argues that the ALJ erred by not including the mental impairments he found to be "severe" at Step Two in his RFC determination. At Step Two, the ALJ found Plaintiff to have anxiety disorder, PTSD and depression.[48] According to Plaintiff, "despite finding that Mr. Taysom's mental impairments were severe impairments at Step 2, a finding that would indicate these impairments caused significant limitation in Mr. Taysom's ability to perform basic work functions, the ALJ included no meaningful limitations in his RFC assessment for these

---

[46] See e.g. Tr. 807-842.
[47] See SSR 96-2p, 1996 WL 374188 at *4. ("Treating source medical opinions are…entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927, In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")
[48] Tr. at 22.

impairments."[49] The Plaintiff then attacks the ALJ's methodology as to what constitutes "mild" and "moderate" limitations.

Upon review, the Court does not find error in the ALJ's RFC analysis with regard to Plaintiff's mental limitations. In his opinion, the ALJ stated, "...the undersigned further reduced the residual functional capacity to incorporate limitations from his mental impairments."[50] As Defendant correctly points out, "the issue is not how the ALJ defines mild and moderate. Instead, the issue is whether the ALJ's articulation of his reasoning is sufficiently specific to permit meaningful judicial review."[51] The Court finds Defendant's arguments have merit and the Court is able to meaningfully review the ALJ's reasoning with regard to the Plaintiff's mental limitations despite Plaintiff's disagreement with the percentages and methodology used by the ALJ. The Court also agrees with Defendant's argument that "Plaintiff has not identified any additional functional limitations arising from his mental health impairments" and the record does not support any additional limitations that the ALJ did not consider or find.[52] Therefore, substantial evidence supports the ALJ's RFC determination with regard to Plaintiff's mental impairments.

    ii.    **Medication Side Effects**

In his RFC questionnaire, Dr. Parry stated Plaintiff's suffered nausea and headaches as a result of taking the medications Lyrica and Neurontin.[53] These side effects, according to Dr. Parry, have implications for Plaintiff working.[54] With regard to the medication Lortab, Plaintiff reported that it made Plaintiff tired,[55] disrupts his higher brain function, makes him anti-social

---

[49] Docket no. 14 at p. 13.
[50] Tr. at 25.
[51] Docket no. 19 at p. 16.
[52] Id. at p. 17.
[53] Tr. at 917.
[54] Id.
[55] Tr. at 255.

and upsets his stomach.[56] Plaintiff argues the ALJ erred by failing to discuss or analyze these side effects in formulating Plaintiff's RFC.

The Defendant argues that the ALJ did not err in failing to include a discussion of Plaintiff's medication side effects because the ALJ stated that he had considered the entire record and the ALJ found Plaintiff not to be credible. In addition, Dr. Parry did not provide any indication that the side effects from Plaintiff's medication were severe or debilitating. Further, Dr. Parry did not provide any limitations or opinions about the medications.

The Court agrees with the Plaintiff's arguments. In the questionnaire filled out by Dr. Parry, there was a specific question regarding medication side effects[57] and Plaintiff reported that he experienced side effects from his medications. True, the ALJ did state he reviewed the entire record in making his decision, discounted Dr. Parry's opinion (which the Court found to be an error) and found Plaintiff not to be credible, but in the instant case there was direct evidence that Plaintiff experienced side effects from his medications. Thus, substantial evidence does not support the ALJ's failure to include or discuss any limitations resulting from Plaintiff's medications nor demonstrate that these side effects were contemplated in formulating the RFC.

## CONCLUSION & RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's arguments relating to the ALJ's evaluation of the opinions of Plaintiff's treating physician and lack of analysis of medication side effects do have merit and warrant remand for further consideration. Therefore, **IT IS HEREBY RECOMMENDED** that the District Court **REVERSE AND REMAND** the decision of the Commissioner.

---

[56] Tr. at 258.
[57] Tr. at 917.

## NOTICE

Copies of this Report and Recommendation are being sent to all parties who are hereby notified of their right to object.[58] Pursuant to 28 U.S.C. § 636(b)(1), a party may file objections to the magistrate judge's report, for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 8 December 2014.

Brooke C. Wells
United States Magistrate Judge

---

[58] See 28 U.S.C. § 636(b)(1); F.R.C.P. 72(b).